IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Anna-Marie L., | ) |
|     *Plaintiff*, | ) |
| | ) Case No. 3:21-cv-50354 |
| v. | ) |
| | ) Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, | ) |
| Acting Commissioner of Social Security, | ) |
|     *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anna-Marie L. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the partially favorable decision granting her application for supplemental security income but denying her application for childhood disability benefits.[1] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

**I. Background**

In July and December 2018, Plaintiff filed applications for childhood disability benefits and supplemental security income alleging a disability beginning on January 3, 2005, because of left forearm amputation, anxiety, bipolar disorder, depression, and post-traumatic stress disorder (PTSD). R. 73-74, 92. Plaintiff was 8 years old on her alleged onset date and turned 22 years old on February 4, 2018.[2]

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 6.

[2] An unmarried dependent child over the age of eighteen years is entitled to receive childhood disability benefits based on the earnings record of an insured parent who is entitled to disability benefits if the child has a disability that began before she became twenty-two years old. 42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350(a). The analysis for child disability benefits is essentially the same as it is for disability insurance benefits or supplemental security income, except that a plaintiff must establish that she became disabled

Plaintiff has used mental health services off and on since her childhood. R. 1686. When Plaintiff was 8 years old, her father passed away. R. 1685. Plaintiff's mother remarried when she was 10 years old, but her stepfather later started molesting her. R. 1658. When Plaintiff was 17 years old, she reported her stepfather's actions to her mother. R. 1658. However, Plaintiff's mother did not believe her, and Plaintiff reported that she was kicked out of the house and was homeless for approximately 2 months. R. 65, 850, 1658, 1810. Plaintiff was hospitalized several times with reports of self-harm and suicidal ideation. R. 848, 854, 859. Plaintiff's stepfather was later removed from the home and imprisoned. Records from 2013 reveal mental health diagnoses for bipolar disorder and depression, along with outpatient therapy and psychiatric medications. R. 854-55, 857-58. On June 15, 2018, Plaintiff was in a car accident in which she was injured and hospitalized for over four weeks. R. 1690. Plaintiff ultimately had to have her left arm amputated below her elbow. R. 685-86, 1554.

Following a hearing, an administrative law judge (ALJ) issued a partially favorable decision in March 2021, finding that Plaintiff was disabled since June 15, 2018 and entitled to supplemental security income benefits. R. 16-30. The ALJ determined that beginning on June 15, 2018, Plaintiff's "physical and psychological conditions" would cause her to be "excessively absent and/or would have difficulty performing physical work duties" such that there were no jobs that existed in significant numbers that she could perform. R. 27. However, the ALJ found that Plaintiff was not disabled prior to turning age 22, namely February 3, 2018, and therefore was not entitled to childhood disability insurance benefits.

---

before turning 22 years old. *See Tolefree v. Berryhill*, No. 16 C 7103, 2018 WL 4538783, at *4 n.7 (N.D. Ill. Sept. 21, 2018).

The ALJ found that Plaintiff had the following severe impairments before she turned age 22: bipolar disorder; PTSD; and attention-deficit hyperactivity disorder.[3] The ALJ determined that since Plaintiff's alleged onset date in 2005, her impairments did not meet or medically equal a listed impairment. The ALJ concluded that prior to turning age 22, Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertion levels but with the following nonexertional limitations: "She can perform simple, routine tasks, in work that has only occasional changes in the work setting, and that involves only occasional interaction with the general public and coworkers." R. 20. The ALJ determined that Plaintiff had no past relevant work, but there were other jobs that existed in significant numbers in the national economy that she could perform, including an inspector at both the light and sedentary exertion levels.

After the Appeals Council denied Plaintiff's request for review on July 21, 2021, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable

---

[3] Beginning on June 15, 2018, the ALJ also found the amputation of Plaintiff left hand to be a severe impairment. R. 19.

3

evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### III. Discussion

Plaintiff argues that the ALJ committed reversible error at step 3 and in the RFC determination because he failed to adequately consider her mental health impairments and related limitations before she turned age 22, namely February 3, 2018. Because the Court finds that a remand is warranted on the ALJ's RFC determination, the Court will address this argument first.

Plaintiff argues that despite relying on the state agency physicians' opinions, which were the only mental health specialists to opine on Plaintiff's mental functioning, the ALJ failed to account for the limitations they found regarding her ability to interact with the public and perform one-to-two step tasks. The Commissioner responds that the ALJ properly evaluated all the relevant evidence when assessing Plaintiff's mental functioning and only partially adopting the limitations outlined by the state agency physicians.

A claimant's RFC is the maximum work she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); Social Security Ruling 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 404.1545(a)(3); Social Security Ruling 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345,

4

352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Jarnutowski v. Kijakazi*, No. 21-2130, 2022 WL 4126293, at *4 (7th Cir. Sept. 12, 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

In May 2019, state agency reviewing psychologist Donna Hudspeth, PsyD, reviewed Plaintiff's records for her childhood disability benefits claim and found there was insufficient evidence to substantiate the presence of a mental disorder prior to Plaintiff turning 22 years old. R. 78-79. As a result, Dr. Hudspeth was unable to evaluate Plaintiff's claim or opine on her functional limitations. On reconsideration in December 2019, state agency reviewing physician Lisa Renner, M.D., affirmed Dr. Hudspeth's findings. R. 115.

In June 2019, Dr. Hudspeth reviewed the records for Plaintiff's supplemental security income claim and evaluated her mental functional limitations. Dr. Hudspeth identified severe impairments of amputation; depressive, bipolar, and related disorders; and anxiety and obsessive-compulsive disorders. R. 96. Dr. Hudspeth opined that Plaintiff had moderate limitations in interacting with others and concentrating, persisting, and maintaining pace and mild limitations in understanding, remembering, or applying information and adapting or managing oneself. R. 97. Dr. Hudspeth opined that Plaintiff "has sufficient cognitive abilities and memory skills to engage in one /two step tasks in a work setting. The claimant could sustain attention, concentration, persistence and pace to perform these tasks. The claimant can communicate with a supervisor and fellow employees but should not be required to deal with the public." R. 102-03. On reconsideration in November 2019, Dr. Renner affirmed Dr. Hudspeth's findings. R. 139.

In formulating the RFC for the period before Plaintiff turned 22 years old, the ALJ found the first set of opinions from Dr. Hudspeth and Dr. Renner regarding Plaintiff's childhood

5

disability claim "not persuasive, as the record contains evidence of mental health diagnoses and mental health treatment dating back to at least 2013 (B2F; B3F; B5F)." R. 24. Nevertheless, the ALJ went on to evaluate Dr. Hudspeth and Dr. Renner's second set of opinions relating to Plaintiff's supplemental security claim and found them applicable to the period before Plaintiff turned 22 years old. *See* R. 19, 24. Specifically, the ALJ found these opinions:

> largely persuasive, as they are supported by detailed explanation after a review of the record. The record documents temporary exacerbations of the claimant's mental health impairments, but durationally the record supports no more than moderate limitations. It is also noted that there is a history of non-compliance; when compliant with medication the claimant reported improvement in symptoms. However, given the claimant's consistent complaints of difficulty being around large groups of people, a limitation of occasional interaction with co-workers, in addition to the general public, is appropriate (B2F; B3F; B5F).

R. 24. The ALJ assessed the following mental restrictions in the RFC determination: "She can perform simple, routine tasks, in work that has only occasional changes in the work setting, and that involves only occasional interaction with the general public and coworkers." R. 20.

The only opinions the ALJ relied on in formulating the RFC were the June and November 2019 opinions from Dr. Hudspeth and Dr. Renner.[4] However, as Plaintiff points out, the ALJ did not explain why he did not adopt their restrictions that Plaintiff "should not be required to deal with the public" and "has sufficient cognitive abilities and memory skills to engage in one/two step tasks in a work setting." R. 102-03.

As to Plaintiff's ability to deal with the public, the Commissioner cursorily argues that the ALJ "reasonably considered the entirety of the record" in finding Plaintiff could tolerate occasional contact with the public. Def.'s Resp. at 12, Dkt. 22. This Court disagrees. Not only did the ALJ

---

[4] The ALJ also considered an opinion from Plaintiff's hand surgeon but ultimately rejected the mental limitations opined to because the doctor did not treat Plaintiff for her mental impairments, and it was outside of his area of expertise. R. 25. Plaintiff does not dispute this finding.

omit this limitation from the RFC without explaining why, but he also failed to cite any evidence to support the specific limitation he included. An ALJ's ability to make inferences regarding Plaintiff's functional limitations caused by her impairments is not unlimited. It must be tied to the evidence in the record such that the ALJ's RFC finding is based on all the relevant evidence in the record. *See* 20 C.F.R. § 404.1545(a).

Here, in crediting Dr. Hudspeth and Dr. Renner's moderate limitations in interacting, the ALJ found that although Plaintiff had problems getting along with others, including authority figures, due to anger issues and bipolar depression and anxiety, Plaintiff "continued to hang out with friends at home and talk on the phone daily." R. 20. The ALJ made no attempt to explain why Plaintiff's ability to hang out with her friends outweighs her explosive behavior when interacting with others such that Plaintiff's moderate difficulties in interacting with others is accommodated by only occasional contact with the public. The lack of explanation is especially problematic where Dr. Hudspeth and Dr. Renner were the only medical opinions addressing this issue and found a greater limitation.

Nevertheless, the Commissioner argues that the ALJ was not required to adopt the opinions of the state agency physicians because the ALJ has the final responsibility for determining Plaintiff's RFC. Def.'s Resp. at 12, Dkt. 22 (citing *Retzloff v. Colvin*, 673 Fed. App'x 561, 568 (7th Cir. 2016) (unpublished); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)). However, the cases the Commissioner relies on do not support the ALJ's decision in this case. In *Retzloff*, "the ALJ relied not on his own assessment" but on a doctor's earlier opinions, as opposed to later opinions, to support the RFC findings. 673 Fed. App'x at 568. In *Schmidt*, the ALJ similarly weighed multiple doctors' opinions when formulating the RFC. Here, the ALJ was not faced with conflicting opinions to weigh. Dr. Hudspeth and Dr. Renner offered the only opinions on Plaintiff's

7

mental functional limitations. Yet, without explanation, the ALJ found their opinions largely persuasive but did not fully adopt their restrictions in the RFC. This leaves the Court guessing as to the basis for the ALJ's RFC determination.

As for limiting Plaintiff to simple, routine tasks, the Commissioner makes three arguments to assert that the RFC was consistent with the state agency physicians' opinions. First, the Commissioner argues that although the state agency physicians found that Plaintiff had the ability to engage in one-to-two step tasks, they also found that Plaintiff had no understanding or memory limitations. However, the ALJ did not cite this finding in his summary of the state agency physicians' opinions or rely on it when supporting the RFC. Accordingly, the Commissioner's "attempt to supply a post-hoc rationale" for the ALJ's decision "runs contrary to the *Chenery* doctrine" and are improper. *Lothridge*, 984 F.3d at 1234-35; *see also Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon."). The doctrine is especially applicable here where the state agency physicians specifically referenced Plaintiff's cognitive abilities and memory skills when opining that Plaintiff should be limited to one-to-two step tasks. *See* R. 102.

Second, the Commissioner argues that restricting Plaintiff to simple, routine tasks, accommodated the state agency physicians' determination that Plaintiff could not perform detailed work. Even if true, the state agency physicians also found that Plaintiff had sustained concentration and persistence limitations and was moderately limited in her ability to maintain attention and concentration for extended periods. R. 101-02. Without an explanation from the ALJ, it is unclear whether the ALJ fully considered Plaintiff's concentration and persistence limitations in limiting Plaintiff to only simple, routine tasks.

Lastly, the Commissioner argues that Plaintiff offers no evidence to support that she would have trouble concentrating on work tasks of more than one or two steps. Def.'s Resp. at 13, Dkt. 22. The Commissioner overlooks that the state agency physicians, whose opinions the ALJ found largely persuasive, limited Plaintiff to one-to-two step tasks. Although the ALJ acknowledged the state agency physicians' finding in his decision, he did not include a restriction for one-to-two step tasks in the RFC and failed to explain why such a limitation was not included.

Nevertheless, the Commissioner cites to three cases where the Seventh Circuit affirmed a hypothetical with a simple-task restriction to argue that such limitations may properly account for moderate limitations in concentration, persistence, and pace. Def.'s Resp. at 13, Dkt. 22 (citing *Urbanek v. Saul*, 796 Fed. App'x 910 (7th Cir. 2019) (unpublished); *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019); *Pavlicek v. Saul*, 994 F.3d 777 (7th Cir. 2021)). In those case, the ALJs relied on a doctor's assessment or the claimant's testimony explaining what the particular type of concentration problem was, which in turn allowed the ALJ to formulate the RFC. *See, e.g., Urbanek*, 796 Fed. App'x at 914 (finding that the ALJ appropriately relied on doctor's testimony, which was consistent with the opinions of the agency psychologists and the plaintiff's own doctors, to formulate the RFC, which included all the doctor's proposed limitations). Here, the ALJ had an assessment from Dr. Hudspeth and Dr. Renner opining that Plaintiff should be limited to one-to-two step tasks. Despite being the only opinions he claimed to rely on in formulating the RFC, the ALJ does not explain how Plaintiff's difficulties with concentration, persistence, and pace, caused by Plaintiff's severe mental impairments, are accommodated by a restriction to simple, routine tasks.

Without further explanation, or support from a medical source, the ALJ's RFC assessment is not supported by substantial evidence. "While a mild, or even a moderate, limitation in an area

9

of mental functioning does not *necessarily* prevent an individual from securing gainful employment, [ ] the ALJ must still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC." *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017) (emphasis in original) (internal citation omitted). Here, the ALJ failed to sufficiently explain the evidence supporting the RFC limitations or otherwise explain his reasoning for discounting portions of the only other medical opinions in the record opining to a more restrictive RFC.

For the reasons stated above, the ALJ's RFC determination does not provide a logical bridge between the evidence and his conclusion. *See Jarnutowski*, 2022 WL 4126293, at *3 ("[E]ven under this deferential standard of review, an ALJ must provide a logical bridge between the evidence and [his] conclusions.") (internal quotation marks omitted). Accordingly, the Court finds that a remand is warranted for proper consideration of the impact Plaintiff's limitations in interacting with others and in concentration, persistence, and pace would have on Plaintiff's RFC. In remanding this case, the Court is not indicating that the evidence requires a more restrictive RFC determination. Rather, on remand, the ALJ must engage in a more explicit analysis about the impact of Plaintiff's limitations on the RFC findings. *See Amey*, 2012 WL 366522, at *13 (requiring the ALJ to explain how he reached his RFC conclusions). The ALJ shall explicitly address all of Plaintiff's mental limitations, as supported by the record, in both the RFC and in the hypothetical to the VE to determine whether there are jobs that exist in significant numbers that Plaintiff can perform.

In light of this Court's remand for a new RFC determination, any remaining issues not addressed herein shall be considered on remand along with the above issues. Plaintiff's counsel should raise all such issues with the ALJ on remand, both in a pre-hearing brief and at the

10

administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceeding consistent with this opinion. This Court declines to order a finding of disability based on the record before it. It is more appropriate to remand to the ALJ to properly evaluate the evidence as outlined above and issue a new decision.

Date: September 30, 2022    By: _/s/ Lisa A. Jensen_
Lisa A. Jensen
United States Magistrate Judge